### STAUFFER v. LANE.

No. 25852.   Sept. 10, 1935.

Walter Marlin and O. J. Roberts, for plaintiff in error.

Wm. G. Davisson, for defendant in error.

OSBORN, V. C. J. This action was instituted in the district court of Oklahoma county by Jesse Lane, hereinafter referred to as plaintiff, against S. M. Stauffer, hereinafter referred to as defendant, to recover damages for breach of a contract. The cause was tried to a jury and a verdict rendered in favor of plaintiff. From a judgment thereon, defendant has appealed.

The contract upon which the action is based is set out in full as follows:

"Drilling Contract.

"This agreement, made and entered into this 20th day of May, A. D. 1930, by and between S. M. Stauffer, of Oklahoma City, party of the first part, and Jesse Lane, of Shawnee, Okla., party of the second part,

"Witnesseth:

"That said party of the first part hath covenanted and agreed with party of the second part to drill for said party of the first part a test well for the purpose of obtaining oil or gas. Well to be known as McCully No. 1, located on block 29, original townsite of Asher, Okla., as shown on the recorded plat thereof.

"The said well unless sooner abandoned by direction of the said party of the first part is to be drilled to a depth of 3,400 feet unless a commercial well, or granite is found at a lesser depth. The material, machinery, appliances and labor necessary for drilling and completing said well shall be furnished and the work of drilling the same shall be done in a manner hereinafter specified, viz.:

"A complete rotary derrick of good quality to be furnished and erected on the location by party of the first part.

"All casing, fuel, water and tanks to be furnished on location by party of the first part.

"If well is to be drilled in with cable tools after setting the oil string, said party of the first part will standardize said rotary derrick ready for installation of cable tools.

"All drilling equipment and machinery, including fishing tools, necessary for the drilling of the said well to a depth of 3,400 feet and the labor connected therewith shall be furnished by the party of the second part solely at his own expense.

"Said party of the second part shall be paid at the rate of seven ($7) dollars per foot for drilling said well to contract depth as aforesaid mentioned and to be paid as hereinafter set forth. The labor and use of tools for drilling said well in shall be one hundred ($100) dollars per day for each 24 hour day after setting of oil string.

"Compensation insurance is to be carried at all times according to the state law by said party of the second part during drilling operations.

"The party of the first part is to furnish all necessary casing, casing shoes, casing clamps, fuel and water for the drilling of said well and at the expense of the party of the first part.

"The party of the second part is to receive as compensation for the drilling of said well seven ($7) dollars per foot for the actual footage drilled ready to set casing on oil sand payable as follows:

"Five thousand ($5,000) dollars cash payable when surface casing is set.

"Five thousand ($5,000) dollars at 2,000 feet depth.

"Five thousand ($5,000) dollars at 3,000 feet depth.

"The balance of contract price for the actual number of feet drilled when the oil string is set.

"Party of the first part hereby agrees to assign a four sixty-fourth (4/64ths) undivided interest in said lease for the sum of four thousand ($4,000) dollars, which amount shall be deducted from the final payment on this contract.

"When the said well approaches any oil or gas sand, the party of the second part shall immediately notify said party of the first part before drilling into the said sand, and thereupon any future drilling, or casing into or through said sand shall be under the supervision of the party of the first part; but the work in connection therewith shall be done by the party of the second part at his own direction and risk.

"When well is completed, unless prevented by too great volume of gas or oil, it shall be thoroughly bailed by party of the second part until all drillings and sediments are removed and thoroughly cleaned.

"In the case of a dry hole, the well shall be plugged according to the rules of the Corporation Commission, and the casing pulled by the party of the second part; but the actual expense of doing said plugging and pulling casing shall be paid for by the party of the first part.

"The said party of the second part agrees

to begin moving in materials and erecting same for drilling of said well within three days from the date of this contract, and to prosecute the work diligently until completion.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and date first above written.

"S. M. Stauffer, Party of the First Part.

"Jesse Lane, Party of the Second Part."

On the date of the execution of the above contract, defendant executed and delivered to plaintiff an assignment of a 4/64 undivided interest in the lease.

Thereafter and within the time fixed by the contract, plaintiff moved a rotary drilling rig upon the premises, drilled to a depth of 30 or 40 feet, at which depth the surface casing was set, and made demand for the first installment of $5,000. Defendant paid to plaintiff the sum of $625 on said installment. Plaintiff testified that he was unable to secure further payments, but was requested by defendant to leave the rig on the location, and did leave the rig and tools on the location until some time in October, 1930, at which time he was notified by defendant to discontinue further drilling.

In his first cause of action plaintiff alleged his compliance with the terms of the contract by setting up the drilling rig and setting the surface casing, admitted receipt of $625 and prayed for judgment for $4,-375, with interest. For a second cause of action plaintiff alleged that at the request of defendant, he left the rig upon the premises for a certain period of time and is entitled to damages for the reasonable rental value thereof for said period of time, which he alleged is $50 per day. Under the evidence, plaintiff could not recover said rental for a longer period than 120 days.

For answer defendant alleged the payment of $625 and the delivery of the assignment of the interest in the lease above mentioned, which he alleged was of the agreed value of $4,000, and that he is entitled to a credit of $4,625 on the $5,000 installment fixed by the contract. It is further pleaded that plaintiff and not defendant breached the contract, and by counterclaim, defendant seeks to recover damages against plaintiff for said breach.

By way of reply plaintiff alleged that by reason of defendant's breach of the contract, the interest in the lease assigned to him by defendant had become practically worthless, and defendant was not entitled to take credit for the value of the leasehold interest fixed by the terms of the contract. The verdict of the jury was in favor of plaintiff and his recovery was fixed in the sum of $4,875.

In seeking a reversal of the judgment of the trial court, defendant relies upon a single proposition, which is stated as follows:

"That the court erred in giving instruction No. 10, which is as follows: 'It is further provided in the contract that the defendant should assign to the plaintiff and he did assign to him as shown by the evidence in this case, an undivided 4/64ths interest in the lease, which at the agreed price of $4,000 was to be credited against the payment of the final balance upon completion of the well. If, therefore, under the evidence in this case, you find that the well was abandoned by the defendant and that the plaintiff had done all of the things encumbent upon him to be performed under the terms of the contract so far as he was permitted to do so, then as the court has heretofore instructed you, he would have been entitled to the payment of the first $5,000 payment. However, it is undisputed that the defendant had paid him the sum of $625 and to this $625 should be added the reasonable value of this assignment. You will therefore determine from the evidence of this case what was the reasonable value of this 4/64ths interest, in the lease, and adding that to the sum of $625, return a verdict for the plaintiff for what, if any, you find to be the difference between this sum and the sum of $5,000.

"Of course, if you fail to find that the defendant abandoned the drilling of the well, but that on the other hand it was the plaintiff who abandoned it, plaintiff would not be entitled to recover."

It is urged that the trial court committed error in instructing the jury to determine the reasonable value of the interest in the lease assigned to plaintiff, for the reason that the value thereof was fixed by the terms of the contract and the court is not authorized to change the language or import thereof by his instructions.

The particular portion of the contract relied upon by defendant to establish his position is as follows:

"Party of the first part agrees to assign a four sixty-fourth (4/64ths) undivided interest in said lease for the sum of four thousand ($4,000) dollars which amount

shall be deducted from the final payment on this contract."

It is noted that the value of the leasehold interest is fixed by the terms of the contract, but we must give effect to the intention of the parties indicated by the stipulation that said amount "shall be deducted from the final payment on the contract." It is clear that both parties contemplated that the contract would be fully performed and that the value of the leasehold interest was fixed in contemplation of the full compliance of the contract by both parties. The verdict of the jury includes a finding that defendant and not plaintiff breached the contract. Garner v. Riddle, 140 Okla. 79, 282 P. 319. Plaintiff does not seek specific performance of the contract, but damages for the breach thereof. By the pleadings and evidence the diminished value of the leasehold interest caused by the breach of the contract and consequent failure to complete the drilling of the well is relied upon as an element of damage occasioned by, and flowing out of, said breach. Whether the leasehold estate was diminished in value or whether a diminished value thereof was occasioned by a breach of the contract constituted issuable controversies of fact properly raised by the pleadings and evidence in this case, and the court did not err in submitting such controversies to the jury.

We have examined the entire record, and it appears that the verdict is amply sustained by the evidence and that the issues of law were fairly presented in the court's instructions.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.